## UNITED STATES EASTERN DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ERIN KING, Individually and | ) | |
| On Behalf of All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | JURY TRIAL DEMANDED |
| | ) | |
| vs. | ) | |
| | ) | |
| NORDSTROM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION

Plaintiff Erin King ("Plaintiff"), by her attorneys, individually and on behalf of herself and others similarly situated, alleges upon personal knowledge as to herself and her acts stated herein and, as to all other matters, upon information and belief as follows:

## SUMMARY AND PRELIMINARY STATEMENT

1.       This is a class action brought by Plaintiff, individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or the "Class"), against Nordstrom, Inc. ("Nordstrom" or "Defendant").

2.       Plaintiff generally alleges that Nordstrom violates Missouri law by making false and misleading price comparisons in connection with the advertisement and sale of its merchandise at company-owned Nordstrom Rack stores and website.

3.       The false and misleading price comparisons appear in a variety of places, including on price tags affixed to items, on signs posted in Nordstrom Rack retail stores, in print advertisements, in mailing circulars, and on the Nordstrom Rack website— www.nordstromrack.com.  Through these mediums, Nordstrom represents that consumers can buy products at a "savings," at a percentage off (e.g., "[x]% off") and/or at a substantial discount

from a higher comparison price (usually referred to as a "Compare at" or "comparable value" price).  In reality, the advertised comparison price, percentage off and "savings" are illusory, fictitious and in violation of Missouri law because:

- The advertised higher, comparison prices are not actual or bona fide recent former prices of the same merchandise sold by Nordstrom;

- Nordstrom does not adequately disclose that the price used as a basis for the comparison price was not Nordstrom's own former price;

- The comparison prices are not actual or representative prices at which the same products have been sold or offered for sale in the local area during the 90 days immediately preceding the date on which Nordstrom advertises the price comparison; and

- To the extent the higher comparison prices are meant to convey a competitor's price, the merchandise sold by Nordstrom Rack is not of the same composition, grade or quality, style or design, model, name or brand, kind or variety as the merchandise recently sold by any local competitor at the higher comparison prices.

4.     As a result of this practice, Plaintiff and the Class have not received the benefit of the bargain that Nordstrom promises them because the products that they purchased from the Nordstrom Rack stores and/or website do not have the higher market value and worth that Nordstrom represents they have through its false and misleading price comparisons.

5.     The Federal Trade Commission ("FTC") describes false price-comparison schemes, similar in all material respects to the scheme employed by Nordstrom, as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price

is the actual, bona fide price at which the article was offered to the public on a
regular basis for a reasonably substantial period of time, it provides a legitimate
basis for the advertising of a price comparison.  Where the former price is
genuine, the bargain being advertised is a true one.  If, on the other hand, the
former price being advertised is not bona fide but fictitious—for example, where
an artificial, inflated price was established for the purpose of enabling the
subsequent offer of a large reduction—the "bargain" being advertised is a false
one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1(a).

6.      The FTC further explains that:

Another commonly used form of bargain advertising is to offer goods at prices
lower than those being charged by others for the same merchandise in the
advertiser's trade area.  This may be done either on a temporary or a permanent
basis, but in either case the advertised higher price must be based upon fact, and
not be fictitious or misleading.  Whenever an advertiser represents that he is
selling below the prices being charged in his area for a particular article, he
should be reasonably certain that the higher price he advertises does not
appreciably exceed the price at which substantial sales of the article are being
made in the area—that is, a sufficient number of sales so that a consumer would
consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a).

7.      Missouri law explicitly forbids the false and misleading price comparisons that

Nordstrom engages in.  It prohibits a seller, such as Nordstrom, from implying any price discount

unless "the reduction is, in fact, from a bona fide regular price in effect immediately prior to the

advertisement."  15 CSR 60-7.050(1)(A).  It also prohibits a seller from advertising a price

comparison when the product being advertised materially differs in composition, grade or

quality, style or design, model, name or brand, kind or variety from a comparative product.  15

CSR 60-7.060(1).  It also prohibits Nordstrom from advertising a price comparison unless the

comparative price is actual, bona fide and not illusory or fictitious; and is:

•       A price at which reasonably substantial sales of the product were made to the
        public by the seller in the regular course of business, and on a regular basis during

a reasonably substantial period of time in the immediate, recent period preceding the advertisement; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement.

15 CSR 60-7.060(2).

8. And, to the extent that Nordstrom contends its advertised price comparisons, savings, and percentages off relate to the prices of a competitor, Nordstrom violates Missouri law by failing to disclose the basis of the price comparison and that the higher price used as a basis for the comparison was not its own former price. Nordstrom also violates Missouri law because its higher comparison prices are not representative of a price at which the competitor sold or offered for sale the same product within the 90-day period immediately preceding the advertisement. 15 CSR 60-7.060(4) and (8).

9. Nordstrom also violates Missouri law by failing to disclose intermediate price reductions. 15 CSR 60-7.060(2)(C).

10. These laws exist because legislatures know that false price comparisons are an effective way to sell products that consumers would not otherwise buy, or to sell more products than consumers would normally purchase, absent the false price comparison. Indeed, numerous studies show that consumers are much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have previously sold the product. In other words, consumers are more likely to purchase an item if they are told that an item is worth more than what they are currently being asked to pay for it. *See, e.g.,*

4

Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."); *see also* Compeau & Grewal, in Comparative Price Advertising: Believe It Or Not, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal," and concluding that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."); Joan Lindsey-Mullikin & Ross D. Petty, Marketing Tactics Discouraging Price Search: Deception and Competition, 64 J. of Bus. Research 67 (January 2011) (concluding that "[r]eference price ads strongly influence consumer perceptions of value"); Praveen K. Kopalle & Joan Lindsey-Mullikin, The Impact of External Reference Price On Consumer Price Expectations, 79 J. of Retailing 225 (2003) (concluding that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990) (concluding that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price.")

11.     As alleged herein, Nordstrom has routinely and systematically violated Missouri's prohibition against false, misleading and deceptive price comparisons, and Plaintiff and the Class (as defined below) were exposed to and victims of Defendant's false and deceptive price comparisons when they purchased products at Nordstrom Rack retail stores and on the

Nordstrom Rack website.  Plaintiff and the Class did not receive the benefit of the bargain that Nordstrom advertised they would receive through its use of fictitious and misleading price comparisons.  Instead, Plaintiff and the Class received items of lesser value than what Nordstrom promised them, while Nordstrom was unjustly enriched by selling more products, and at higher prices, than it otherwise would be able to sell absent the false price-comparison advertising scheme.

## PARTIES

12.     Plaintiff is and was at all relevant times herein a natural person and a resident of St. Louis, Missouri.  On numerous occasions during the proposed Class Period (defined below), Plaintiff bought products for personal, family or household purposes at an advertised discount from an advertised comparison price at one or more Nordstrom Rack retail stores located in Missouri.

13.     Defendant Nordstrom is and, at all relevant times herein was, a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 1617 Sixth Avenue, Seattle, Washington 98101.  Either on its own, or through its operating subsidiaries, Nordstrom owns, operates and controls Nordstrom Rack retail stores in Missouri and throughout the United States, and it owns, operates and controls the Nordstrom Rack website from which consumers in Missouri can purchase merchandise from Nordstrom. Plaintiff is informed and believes and thereon alleges that Nordstrom is licensed to do business, and does business, in Missouri.

14.      Plaintiff is unaware of the true names and capacities of the defendants sued herein as DOES 1 through 20 and therefore sues these defendants by such fictitious names. Plaintiff alleges on information and belief that at all relevant times each of the DOE defendants

was responsible, in some manner, for the acts, omissions, and occurrences herein alleged and Plaintiff's damages were proximately caused thereby.  Plaintiff will amend this Complaint to allege the true names and capacities of the DOE defendants after they have been ascertained.

15.     At all relevant times herein mentioned, Defendant was an agent or joint venturer in doing the acts alleged herein, and was acting within the course and scope of such relationship.  Each Defendant had actual and/or constructive knowledge of the acts of each other Defendant, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

16.     Defendant aided and abetted, encouraged and rendered substantial assistance in committing the unlawful and deceptive acts alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, Defendant acted with an awareness of the wrongdoing and realized that the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17.     Plaintiff is informed and believes and thereupon alleges that at all relevant times herein, each Defendant was the agent, representative, partner, parent company, subsidiary or affiliate of the other Defendants and was acting, or acted for, within the authority of such agency, representation, partnership, or affiliation while doing or omitting to do the acts alleged herein and with the permission, approval, consent, and/or ratification of all other Defendants.

18.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between all of the Defendants, such that all individuality and separation ceased and defendants became the alter egos of the other Defendants and their principals.  Whenever in this complaint a reference is made to any act or omission of a particular defendant, such allegation

7

shall be deemed to mean that said defendant, and its officers, directors, agents, representatives, and employees did authorize such act while actively engaged in the management, direction or control of that Defendant, and while acting within the course and scope of their employment or agency.

## JURISDICTION AND VENUE

19.     Plaintiff and/or other putative Class Members have different citizenship from Defendant.

20.     The aggregate amount of damages incurred by Plaintiff and the Class (as defined below) exceeds $5,000,0000.00.

21.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. Section 1332, subdivision (d).

22.     As set forth herein, Defendant has sufficient contact and presence within the State of Missouri to confer this Court with personal jurisdiction over Defendant.  Defendant owns, operates, licenses and/or otherwise controls numerous retail stores in the State of Missouri. Defendant also operates a website, nordstromrack.com, from which Missouri residents can and do buy merchandise, including products advertised with a false and misleading comparison price.

23.     Venue is proper in this Court under 28 U.S.C. Section 1391 because Defendant transacts business in this judicial district in the County of St. Louis, State of Missouri, and the claims of Plaintiff and other putative Class Members arose in this judicial district.  Plaintiff resides in this judicial district, viewed Defendant's false and misleading advertisements in this judicial district, and purchased items at Defendant's stores located in this judicial district.

## GENERAL ALLEGATIONS

24.     On its website, Nordstrom claims:

Nordstrack Rack is the off-price retail division of Nordstrom Inc., which was founded in 1901 in Seattle, Washington by John W. Nordstrom.  Since then, Nordstrom has expanded from a small Seattle shoe shop to a leading fashion specialty retailer with over 100 stores and an e-commerce business that continues to grow and evolve.  Nordstrom Rack has been serving customers for over 40 years, offering many of the same Nordstrom brands we know our customers love at great prices.  And now that we are online, we hope we can serve you even better—giving you more ways to shop, wherever you may be.

https://www.nordstromrack.com/about (last accessed June 17, 2019).

25.     The website also states:

Why Shop the Rack?

Because we have the most current trends and the brands you love for 30-70% off original prices—each and every day.  And because we're obsessed with finding new ways to help you shop the way you want to shop.  It's all about serving customers on their terms: in store, online or through mobile and exciting flash sales powered by HauteLook.  Whether you prefer the convenience of online shopping or crave the thrill of treasure hunting at one of our many stores, we've got you covered.

https://www.nordstromrack.com/about (last accessed June 17, 2019).

26.     Nordstrom arranges to have price tags affixed to all (or the vast majority) of the products offered for sale in the Nordstrom Rack retail stores.  The price tags are designed and intended to convey that consumers can purchase products at a substantial discount from their fair market value.  Specifically, the tags show a higher comparison price next to words such as "comparable value" or "compare at," which is juxtaposed immediately next to a lower price at which a consumer can purchase the product from the Nordstrom Rack retail store.  The price tags also often use words such as "[x]% off" or "[x]% savings" to emphasize the purported bargain and discount that a consumer will receive if they purchase the item at the Nordstrom Rack store.  Similarly, on the Nordstrom Rack website, Nordstrom displays a higher comparison price that is

9

crossed through with a solid line (a "slash-through" price) juxtaposed immediately next to a lower price that consumers will pay to purchase the item from the nordstromrack.com website. The website also advertises the words "[x]% off" immediately next to the lower price in order to emphasize the perception that consumers can purchase products at a substantial discount from their fair market value.  Notably, however, Nordstrom does not disclose immediately next to the price comparison (either in its Nordstrom Rack stores or on the Nordstrom Rack website) the basis of the price comparison.  In other words, Nordstrom does not state whether the higher price comparison is intended to represent: (a) a current or former price at full-priced Nordstrom stores; (b) a former price at Nordstrom Rack retail stores; or (c) a competitor's price.

27.     In reality, the price comparisons and purported discounts are false, misleading, and in violation of Missouri law because the advertised higher comparison prices are fabricated and do not reflect a former price at which Nordstrom has recently and in good faith sold the products in substantial quantities at either its full priced or Nordstrom Rack stores; nor do they reflect prices at which Nordstrom has recently and in good faith offered to sell them for a substantial period of time at either its full priced or Nordstrom Rack stores.  Nor do they represent the prices at which competitors in the same area have recently offered or sold substantial quantities of the same or similar products.  Accordingly, the products sold at Nordstrom Rack retail stores and on the nordstromrack.com website do not have the higher market value that Nordstrom represents they have through its baseless and fictitious price comparisons.

28.     Nordstrom also offers various promotions, such as store-wide sales, coupons, and other discounts, such that the average actual selling price (and therefore market value) of each item sold at the Nordstrom Rack retail stores and website is often *less* than the purported

discount or "sale" price.  In other words, a consumer who purchases a product at the advertised discount price is likely paying more than the amount most people pay for that item and, therefore, more than the actual fair market value of the item.

29.     Since the higher advertised comparison prices materially overstate the actual market value and worth of Defendant's products, consumers like Plaintiff and the Class who buy these products do not receive the benefit of the bargain Defendant promises them, and they suffer damages because they do not receive items that have the value or worth that Defendant represents they have.  Instead, Plaintiff and the Class receive products that, based on actual, historical selling prices of the same items, have a market value that was, at the time of purchase, either at or below the prices they paid to purchase those items.

30.     Through its use of fictitious and unsubstantiated higher comparison prices, and through its use of words such as "[x]% off and "[x]% savings," Nordstrom intentionally and/or negligently misrepresented and/or failed to disclose material information concerning the actual value or worth of the products it sold to Plaintiff and the Class.  In publishing, displaying, and otherwise communicating and disseminating the higher comparison prices and promises of savings, and in concealing the true information, Defendant intended to induce Plaintiff and the Class to purchase its products in quantities and/or at prices at which they would not otherwise have agreed.

31.     Defendant knew or should have known that its price-comparison advertisements conveyed false information to consumers, including Plaintiff, about the value and worth of the merchandise it sells.  Academic literature shows that false price comparisons and discounts influence consumer behavior; that higher comparison prices influence consumer perception of value and purchasing decisions; and that if a higher comparison price is fictitious or inflated, it is

11

likely to deceive consumers by creating illusions of savings that the consumer thinks they need to take advantage of by purchasing the product now rather than risk losing the purported savings or continuing to look for a better deal elsewhere.

32.     Defendant further knew or should have known that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increases, while their intention to search for a lower price decreases.  Accordingly, information concerning a product's former price and/or comparable value is a material term which influenced Plaintiff, acting as a reasonably prudent consumer, in making decisions as to whether to purchase items advertised and sold by Defendant.

## PLAINTIFF WAS A VICTIM OF DEFENDANT'S UNLAWFUL PRACTICES

33.     After being exposed to Defendant's deceptive price-comparison advertising scheme, Plaintiff purchased numerous products from one or more Nordstrom Rack retail stores for personal, family or household purposes during the Class Period.

34.     In making said purchases, Plaintiff was influenced by the higher advertised value of the products that she purchased, and she bought items she would not otherwise have purchased absent Defendant's price-comparison advertising scheme.  Alternatively, if Defendant had offered a truthful discount from each item's actual fair market value, Plaintiff would have paid less than she did pay to purchase those items.  In any event, Plaintiff did not receive the actual value that Defendant represented she would receive through its false and misleading price-comparison advertising scheme.

35.     For example, on or about May 24, 2019, Plaintiff shopped at the Nordstrom Rack store located in Manchester, Missouri, where she purchased several products for personal, family or household purposes.  This transaction included a pair of "Big Boy: Milen: Black" shorts,

(SKU or UPC # 190930200790), which Nordstrom advertised as having a "comparable value" of $38.00 and a discounted sale price of $13.97.  Plaintiff does not remember the exact details but also believes the price tag referenced a specific percentage "savings" (e.g. "60% savings") to highlight that Plaintiff could purchase the item at a significant discount from its purported "value."  In violation of Missouri law, the price tag did not state whether the higher "comparable value" price was intended to convey a former Nordstrom price, or a price of a competitor; nor did it disclose the basis for the purported "savings."  In deciding to purchase this item, Plaintiff was influenced by Defendant's representation that it had a higher "comparable value" of $38.00 and the fact that Nordstrom represented that she could buy the item for significantly less than its actual value.

36.    Plaintiff is now informed and believes and thereupon alleges that the advertised $38.00 "comparable value," and the advertised percentage "savings" were false, misleading, and in violation of Missouri law, because the purported "comparable value" did not represent the actual, bona fide price at which Nordstrom (or any competitor) had recently offered to sell the product for a reasonable period of time, or at which Nordstrom (or any competitor) sold a substantial number of such products, in the time period recently preceding her transaction. Plaintiff is further informed and believes that Nordstrom may have failed to disclose intermediate markdowns that took place prior to her purchase.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual fair market value of the item at the time of her purchase was materially lower than the $38.00 "comparable value" advertised by Nordstrom.  As a result, Plaintiff suffered monetary damages because she did not receive a product worth the higher $38.00 "comparable value," as Nordstrom represented she would receive, and she therefore did not receive the benefit of the bargain that Nordstrom promised.

37.     On or about May 24, 2019, Plaintiff also purchased from the Nordstrom Rack retail store in Manchester, Missouri, a pair of women's shoes (SKU or UPC # 191902037970) advertised with a "comparable value" of $64.95 and a discounted sale price of $51.97.  Plaintiff does not remember the exact details but also believes the price tag referenced a specific percentage "savings" (e.g. "20% savings") to highlight that Plaintiff could purchase the item at a significant discount from its purported "value."  Contrary to Missouri law, the price tag did not state whether the higher "comparable value" price was intended to convey a former Nordstrom price, or a price of a competitor; nor did it disclose the basis for the purported "savings."  In deciding to purchase this item, Plaintiff was influenced by Defendant's representation that it had a higher "comparable value" of $64.95 and the fact that Nordstrom represented that she could buy the item for significantly less than its actual value.

38.     Plaintiff is now informed and believes and thereupon alleges that the advertised $64.95 "comparable Value" was false, misleading, and in violation of Missouri law, because it did not represent the actual, bona fide price at which Nordstrom (or any competitor) had recently offered to sell the product for a reasonable period of time, or at which Nordstrom (or any competitor) sold a substantial number of such products, in the time period recently preceding her transaction.  Plaintiff is further informed and believes that the prevailing retail price and, therefore, the actual market value and worth of this item at the time of her purchase was materially lower than the advertised $64.95 "comparable value" and may have even been less than the so-called "sale" price.  As a result, Plaintiff suffered monetary damages because she did not receive a product worth $64.95, as Nordstrom represented she would receive, and therefore did not receive the benefit of the bargain that Nordstrom promised.

39.     In connection with the above transactions, Plaintiff received a printed receipt from Nordstrom that reiterates the "comparable value" price comparisons outlined above and states "What a Deal! $37.01 less than comparable value."  A true and correct copy of the receipt Plaintiff received from Nordstrom is attached hereto as Exhibit 1.  For the same reasons detailed above, Plaintiff contends that Nordstrom's representations on the receipt are also false, misleading and in violation of Missouri law.

40.     The transactions described above are but a small sampling of the numerous products that Plaintiff purchased from Defendant at its Nordstrom Rack stores during the Class Period based on similar false and misleading representations concerning those products' purported "comparable value" and related "savings."  Plaintiff was similarly injured as a result of Nordstrom's false and deceptive price comparisons with respect to each such purchase and, by detailing the above transactions, Plaintiff does not in any way intend to limit the scope of her claims or request for relief to the detailed transactions.  Rather, Plaintiff expressly seeks damages for all of her similar transactions with Nordstrom and, if necessary, Plaintiff will amend or seek leave to amend this Complaint to detail such additional transactions after further discovery and investigation.

41.     Plaintiff would like to shop at Nordstrom Rack again in the immediate future, but she currently cannot trust that Defendant will advertise truthful price comparisons in compliance with Missouri law.  If Defendant agrees to voluntarily change its practices, or if it is ordered to do so by a court of competent jurisdiction, such that Plaintiff can reasonably trust that Defendant's prices and/or price comparison advertisements will comply with Missouri law, Plaintiff will return to shop at Nordstrom Rack.

42.     Defendant's deceptive practices are wide-spread over the course of many years. Plaintiff therefore believes that hundreds or thousands of similar and materially indistinguishable acts of misleading, untrue, false and deceptive price-comparison advertising were committed by Defendant with respect to Class Members' purchases at Nordstrom Rack stores and on the nordstromrack.com website throughout Missouri during the Class Period.

43.     Plaintiff asserts that Defendant continues to employ unlawful advertising practices as alleged herein.  Plaintiff, on behalf of herself and the putative Class, seeks all actual damages, punitive damages, injunctive relief, costs, attorneys' fees, and any other relief the Court deems proper.

## CLASS DEFINITION

44.     The Class is defined as follows:

"All persons who, while in the state of Missouri, and any time between the date that is five years immediately preceding the filing of this lawsuit and the date of any judgment in this case (the "Class Period"), purchased from a Nordstrom Rack retail store or on the www.nordstromrack.com website for personal, family or household purposes, one or more items advertised with a "Compare at," "comparable value," and/or "% savings," and/or "% off" price and who have not received a refund or credit for their purchase(s)."

Excluded from the Class are all current and past officers, directors and employees of Nordstrom.

45.     Plaintiff reserves the right to amend this class definition, including the addition of any subclasses and/or modification of the Class Period, at any time based upon further investigation, information and/or discovery.

## CLASS ALLEGATIONS

46.     Plaintiff seeks certification of the Class pursuant to Federal Rules 23(a) and 23(b)(3) and may also, or in the alternative, seek certification of subclasses and/or particular issues pursuant to Federal Rules 23(c)(4) and (5).

47.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class Members is unknown to Plaintiff at this time, the individual identities of the individual Class Members are ascertainable through Defendant's records and/or by public notice and self-identification.

48.     There is a well-defined community of interest in the questions of fact and law involved affecting the Class.  The questions of law and fact common to Class Members predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

a.      Whether Nordstrom made false or misleading statements in connection with its price-comparison advertising;

b.      Whether Nordstrom's price-comparison advertising was false, deceptive, misleading or unlawful under Missouri law;

c.      Whether Nordstrom's price-comparison advertising is likely to deceive a reasonable consumer;

d.      Whether Nordstrom's statements regarding its price comparisons were material to Plaintiff's and consumers' purchasing decisions;

e.      Whether the "Compare at" and/or "comparable value" prices advertised by Nordstrom were actual and bona fide, or fictitious prices under Missouri law;

      f.      Whether Nordstrom had a bona fide intent of offering or selling a reasonable quantity of products offered at Nordstrom Rack stores and on the nordstromrack.com website at the higher advertised comparison prices;

      g.      Whether a reasonable consumer would understand Defendant's comparison prices to represent former prices of Nordstrom, or prices that a competitor charged for the same (or materially similar) product;

      h.      Whether Nordstrom had an affirmative duty under Missouri law to disclose the basis for its comparison prices;

      i.      Whether the comparison prices advertised by Nordstrom overstate the fair market value of the items so advertised;

      j.      Whether Nordstrom's representations of "% savings," and/or "% off" were false, misleading or deceptive;

      k.      Whether Plaintiff and putative Class Members have suffered damages as a result of Defendant's conduct;

      l.      Whether Plaintiff and the Class received the benefit of the bargain that Defendant advertised they would receive;

      m.      Whether the Class is entitled to injunctive relief;

      n.      Whether Class Members are entitled to pre-judgment and post-judgment interest;

      o.      Whether the Class is entitled to punitive damages; and

      p.      Whether the Class is entitled to an award of reasonable attorneys' fees and costs.

49.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative set of facts involving Defendant's false price-comparison advertising scheme, and Plaintiffs are entitled to damages of the same character.

50.     Plaintiff will fairly and adequately protect the interests of the Class and has no known conflicts of interest.  Plaintiff has retained counsel experienced in handling consumer class actions of the type alleged herein.

51.     Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and would lead to repetitious trials of the numerous common questions of fact and law in the State of Missouri; and could lead to the establishment of incompatible standards of conduct for Defendant.  Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of, other Class Members. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

52.     Defendant has acted or refused to act on grounds that generally apply to the Class and final injunctive relief is appropriate as to the Class as a whole.  Specifically, Defendant failed to disclose the basis of its price comparisons and advertised misleading and untrue "Compare at," "comparable value," "% off," and "% savings" prices in violation of Missouri law, and injunctive relief is necessary to avoid ongoing violations in the future.

53.     The common questions of law and fact predominate over any questions affecting only individual Class Members.  Furthermore, a class action is a superior method for fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with applicable law.  The interest of Class Members in individually controlling the

prosecution of separate claims against Defendant is small relative to the cost of maintaining an action.

54.     Proper and sufficient notice of this action may be provided to Class Members through methods best designed to provide adequate notice, including potentially a combination of electronic mail and/or postal mail, internet website, and/or publication.

55.     Furthermore, the Class Members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Absent certification of this action as a class action, Plaintiff and the Class will continue to be damaged, thereby allowing Defendant to retain the proceeds of its ill-gotten gain.

56.     Plaintiff alleges that, as a direct result of bringing the allegations herein to Defendant's attention, Plaintiff has or will make substantial and important changes to Defendant's advertising practices.  Thus, Plaintiff has or will enforce an important public right affecting the public interest, conferring a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.  Plaintiff further alleges that private enforcement of the laws in question is both necessary and financially burdensome for Plaintiff.

## COUNT I

### Unlawful Practices in Violation of the Missouri Merchandising Practices Act

57.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

58.     As detailed above, Nordstrom's price comparison advertising scheme violates the Missouri Merchandising Practices Act ("MMPA") which provides, in part, that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice."  V.A.M.S. § 407.020(1).

59.     Nordstrom violates the MMPA because its price-comparison advertising scheme violates federal regulations promulgated by the FTC, including 16 C.F.R. §§ 233.1(a) and/or 233.2(a), which describe acts and practices materially indistinguishable from those of Nordstrom's as deceptive.

60.     Nordstrom also violates the MMPA because its price-comparison advertising scheme violates numerous rules promulgated by the Missouri Attorney General, which such acts and practices are deemed to violate the MMPA, including the following:

a.      A seller, such as Nordstrom, may not "use terminology implying a reduction from a price in effect immediately prior to the advertisement (examples: sale, sale prices, now only $__) unless . . . [t]he reduction is, in fact, from a bona fide regular price in effect immediately prior to the advertisement."  15 CSR 60-7.050.

b.      A seller, such as Nordstrom, may not make any price comparison in which the product being advertised materially differs in composition, grade or quality, style or design, model, name or brand, kind or variety, or service and performance characteristics from the comparative product, unless the seller clearly discloses the material difference in the advertisement with the price comparison.  15 CSR 60-7.060(1).

c.      A seller, such as Nordstrom, shall not make a price comparison to a former price unless the comparative former price is actual, bona fide and not illusory or fictitious, and is—

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes the advertisement; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in the immediate, recent period preceding the advertisement.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the product was offered for sale at the comparative price, or at prices higher than the comparative price, forty percent (40%) or more of the time during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes the advertisement;

- A price at which reasonably substantial sales of the product were made to the public by the seller in the regular course of the seller's business,

and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses, with the price comparison, the date, time or seasonal period of that offer.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the percentage of unit sales of the product at the comparative price, or at prices higher than the comparative price, is ten percent (10%) or more of the total unit sales of the product during the disclosed date, time or seasonal period; or

- A price at which the product was openly and actively offered for sale to the public by the seller in the regular course of the seller's business, and on a regular basis during a reasonably substantial period of time in any period preceding the advertisement, and the advertisement clearly discloses with the price comparison, the date, time or seasonal period of that offer.  There shall be a rebuttable presumption that the seller has not complied with these terms unless the seller can show that the product was offered for sale at the comparative price, or at prices higher than the comparative price, forty percent (40%) or more of the time during a period of time, not less than thirty (30) days nor more than twelve (12) months, which includes or is included within the disclosed date, time or seasonal period.

15 CSR 60-7.060(2)(B).

      d.     A seller shall not make any price comparison based on a competitor's price unless—

- The competitor's price is either a price at which the competitor sold or offered products for sale at any time within the ninety (90)-day period immediately preceding the date on which the price comparison is stated in the advertisement;

- The competitor's price is a price that is representative of prices at which the products are sold or offered for sale in the trade area in which the price comparison is made and is not an isolated price; and

- Disclosure is made with the price comparison that the price used as a basis for the comparison was not the seller's own price.

15 CSR 60-7.060(4).

      e.     A seller shall not advertise a product as reduced in price without specifically disclosing the basis of the comparison unless the price comparison is a comparison to a seller's former price in compliance with 15 CSR 60-7.060(2).

      61.     Nordstrom violates the MMPA because it does not disclose the basis for its comparison prices and/or "% off" price-comparison advertisements and because it cannot show that it complies with any of the requirements mandated under 15 CSR 60-7.060(2)(B) as required for a comparison to its own former price.  To the extent that Nordstrom contends its advertised "comparable value" prices relate to a competitor's price, the representations are misleading and unlawful because Nordstrom does not disclose that the comparison prices are not its own former prices, and the comparison prices are not the prices at which a local competitor sold or offered for sale products of like composition, grade or quality, style or design, model, name or brand,

24

kind or variety in the preceding 90-days, and they are not representative of prices at which like products have been recently sold or offered for sale by competitors in Missouri.

62. Additionally, a seller, such as Nordstrom, shall not make any price comparison to a former price that is not based on the price in effect immediately preceding the reduction unless the seller clearly discloses that intermediate price reductions have been made.  15 CSR 60-7.060(2)(C).  As alleged herein, Nordstrom does not disclose intermediate price reductions in violation of this rule and in further violation of the MMPA.

63. Finally, a seller shall not use any price comparison or savings claims in its advertisement of products in Missouri unless it maintains adequate records which disclose the factual basis for the price comparison or savings claims and from which the validity of any claim can be established, and these records shall be maintained for at least twelve (12) months from the date of the advertisement.  Upon information and belief, Nordstrom does not maintain adequate records that disclose the basis for its price comparisons and upon which the validity of its price comparison claims can be established, thereby further violating the MMPA.

64. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Section 407.020, may bring a private civil action to recover actual damages.  The Court may, in its discretion, award punitive damages and may award to the prevailing party attorneys' fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.  V.A.M.S. § 407.025.

65. As alleged herein, Plaintiff and the Class purchased various products for personal, family or household purposes from Defendant's Nordstrom Rack retail stores and/or website.  As

detailed herein, Nordstrom unlawfully advertised that these products had a higher value than they actually had, and were being offered at a significant "% off" from their higher actual value.  In reality the advertised higher comparison prices did not represent bona fide prices in effect immediately prior to the advertised sales, and they were not bona fide prices that competitors offered or sold the same or materially similar products in the recent past.

66.     The acts and practices of Nordstrom, as alleged herein, caused actual damages to Plaintiff and the Class, who did not receive the benefit of their bargain, because the actual market value of the products they purchased was materially less than the higher comparison prices advertised by Nordstrom.  On behalf of herself and the Class, Plaintiff seeks from Nordstrom benefit of the bargain damages, in addition to punitive damages, interest, attorneys' fees and any and all other relief to which they are entitled.

67.     In addition, Plaintiff and the putative Class seek and are entitled to a permanent injunction restraining Defendant from continuing to violate Missouri law through its price-comparison advertising scheme.

## COUNT II

### Unjust Enrichment

68.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

69.     As a result of Defendant's false price comparison advertising scheme, Nordstrom was unjustly enriched at the expense of Plaintiff and the Class who purchased from Defendant's Nordstrom Rack stores and website more products and/or paid higher prices than they would have absent the scheme.

70.     Nordstrom intentionally accepted, retained and appreciated the money that Plaintiff and the Class spent purchasing products that were tainted and influenced by the false price comparison advertising scheme.

71.     Under the circumstances, it would be against equity and good conscience to permit Nordstrom to retain the ill-gotten benefits that it received from Plaintiff and the Class in light of the fact that the products that Plaintiff and the Class purchased from Nordstrom did not have the higher value or worth that Nordstrom represented they had through its false "comparable value" and "% off" advertisements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for judgment against Defendant as follows:

1.     For an order that this action be certified as a class action on behalf of the proposed Class and Plaintiff be appointed as representative of the Class;

2.     For an order and judgment preliminary and permanently enjoining Defendant from employing, utilizing or otherwise publishing false, untrue, and misleading price comparisons and discounts;

3.     For an order compelling Defendant to institute policies and procedures which will educate Defendant's employees as to Missouri price-comparison advertising laws and assure that such employees follow the law;

4.     For such orders or judgments as the Court may consider necessary to prevent the use or employment of Defendant of any practices which violate Missouri law;

5.     For actual damages, measured by the benefit of the bargain that Nordstrom represented, but which Plaintiff and the Class did not receive;

6.      For equitable relief, including disgorgement of ill-gotten gains and unjust enrichment obtained by Defendant;

7.      For attorneys' fees and costs;

8.      For pre-judgment interest;

9.      For post-judgment interest; and

10.     For such other and further relief as the Court may deem proper.

BLITZ, BARDGETT & DEUTSCH, L.C.

By: /s/   *Christopher O. Bauman*
Robert D. Blitz #24387
Christopher O. Bauman #52480
120 South Central Ave., Suite 1500
St. Louis, Missouri 63105
314-863-1500 (office)
314-863-1877 (facsimile)
rblitz@bbdlc.com
cbauman@bbdlc.com

Matthew Zevin
Stanley Law Group
10021 Willow Creek Road, Suite 200
San Diego, California 92131
619- 235-5306 (office)
815-377-8419 (facsimile)
mzevin@aol.com

Scott A. Kitner
Stanley Law Group
6116 N. Central Expressway, Suite 1500
Dallas, Texas 75206
214-443-4301 (office)

*Attorneys for Plaintiff Erin King*

Daniel B. Sivils #40685
121 Summer Brook Lane
Branson, Missouri 65616-7007
417-827-7202 (office)

*Attorney for Plaintiff Erin King*